Good morning, and may it please the Court. My name is Katie Henderson from Pepperdine Law School, and I, as well as my colleague Cameron Frazier, represent the civilly detained patient, Mr. Corey Hoch. We'd like to reserve four minutes of our time for my colleague to present the rebuttal. All right. Please watch your clock. I will. Thank you. You know it counts down. The fact that Mr. Sanzberro failed to follow the hospital's own policy in conducting the seizure of Mr. Hoch's laptop, as well as the subsequent searches of Mr. Hoch's laptop and his dorm room, shows that this search was unreasonable and unconstitutional. First, the hospital's search policy requires that before conducting a four-cause search, the officers have reason to believe that a patient has contraband. Here, the entire seizure and search was based on Mr. Hoch's possession of an innocuous document, Administrative Directive 820, which was not contraband at the time, nor has it ever been listed as contraband by the facility. The hospital relies on the language in its contraband list, stating that contraband can be something that poses a threat to the institutional security and safety, to state that this document was contraband. However, it is a tribal issue of fact whether this document did pose a threat to institutional safety or security. Counsel, what was the clearly established legal authority indicating to the officers that this search would, in fact, violate the Fourth Amendment? That authority would be from Heydrich v. Hunter, which was established in 2007 and maintained its precedent in 2008 when this search took place. And Heydrich v. Hunter said that no search could be arbitrary, retaliatory, or clearly excessive in light of the legitimate means of it. Are you relying on the opinion that was vacated and remanded? Because at the time, it was still in effect at the time that this search and seizure took place. So Sandsboro should have known that his actions, the arbitrary and retaliatory search against Mr. Hoke, would have been in violation of Mr. Hoke's Fourth Amendment rights. Now, the Supreme Court, since that time, in a case called, I always get it, White v. Pauley or Pauley v. White, has made it very clear that we can't rely on kind of general statements, that we have to go very specific. So is there any authority stating that an officer would know that someone who has been civilly committed for, say, sexual offenses and is currently on parole could not be searched in this circumstance? Do you have any kind of cases that are more specific, as opposed to the general, you know, illegal searches and seizures are bad, something more specific than that? Unfortunately, there are no cases from this circuit or any other circuit that we could find that states exactly what civil detainees' privacy rights would be in this instance. However, according to this Court's decision in Jones v. Las Vegas Metropolitan Police Department, so long as there was law that was clearly established, and here there was, that a search couldn't be retaliatory or arbitrary, and so long as a reasonable jury could find that the search indeed was arbitrary or retaliatory, this Court must reverse on the qualified immunity issue. And even if this Court is entitled to find that Sandsboro is entitled to qualified immunity, that would only bar Mr. Hoek's claims for monetary relief. Mr. Hoek has also claimed relief in the form of an injunction and declaratory relief, and those actions must, those, excuse me, issues must be remanded to determine whether Mr. Hoek's Fourth Amendment rights were violated. And because the search in its actual manner of, because the actual manner of the search was unreasonable and arbitrary, this Court should reverse. There are tribal issues of fact showing that Mr. Sandsboro did not follow the hospital's own policy in conducting the actual search. First, 8820, the hospital's search policy, states that before a search can be conducted, there must be contraband, and here there was no contraband. And additionally, 8820 states that... with regard to possession of electronic devices like this laptop. The hospital has recently amended their regulation, now stating that patients cannot possess any electronic devices that have the capability to access Internet. So what would declaratory relief do? Mr. Hoek seeks declaratory relief establishing civil detainees' privacy rights. So the declaratory relief sought would not be moot here because civil detainees are still living in this facility and are still subjected to searches that could violate the policy. And because Mr. Sandsboro has shown that he did violate the policy in this instance, declaratory relief is not moot. And additionally, even though there is now a policy stating that patients can't have laptops while in Coalinga, Section E of the newly amended regulation states that patients can send their laptops to a destination outside of the hospital. And there is no reason why Mr. Hoek should not be allowed that same opportunity to have his laptop returned to him so that he can then send it outside of the hospital. So where is the laptop now, and how is it feasible that he could have it returned to him by Sandsboro? It seems that the laptop is still in the possession of the L.A. County District Attorney. However, there's nothing in the record showing that Mr. Sandsboro has even attempted to get the laptop back, and there's nothing in the record showing that the L.A. County District Attorney has filed any charges against Mr. Hoek as a result of the search of the laptop. Therefore, on remand, the District Court could determine that Mr. Sandsboro could in fact get the laptop back so that it could be returned to Mr. Hoek. This Court has no further questions. So really it's an order for him to ask the District Attorney's Office if they would voluntarily release it to him? Yes, Your Honor, because there is precedent stating that a person cannot evade liability to return confiscated items simply because they've given it away or destroyed those items, and here that's exactly what Sandsboro has done. So he should not be able to evade liability, being that the hospital held the laptop for four months before searching it and two years before obtaining the warrant and before turning it over to the D.A. Sandsboro should not be able to evade liability for returning Mr. Hoek's property. And if this Court has no further questions, I'd like to save the remainder of my time for my colleague's rebuttal. All right. Thank you, Counsel. Thank you. May it please the Court and Counsel, my name is Lisa Tillman, and I represent Defendant Apelli John Sandsboro, a psychiatric technician employed by the Department of State Hospitals at Coalinga. We ask this Court to affirm the District Court's entry of summary judgment in the Section 1983 action brought by Corey Hoek on three different grounds. First, the seizure of the laptop was based upon appropriate reasonable cause. Second, the search of Mr. Hoek's dormitory room in a 50-bed unit within the Coalinga State Hospital was appropriate and also based on reasonable cause. Third, Mr. Sandsboro, as a psychiatric technician, is entitled to qualified immunity in this matter. Quick question. Does he still work at this facility? He does, Your Honor. Same position as before? Yes. Okay. Thank you. What is a psychiatric technician? Is that some sort of a police officer, a security officer? A psychiatric technician is not at all a part of the Department of Police Services within Coalinga State Hospital. They are part of the treatment unit. So they are on the unit where there are 50 beds providing care and treatment to sexually violent predators. A psychiatric technician literally makes sure that the sexually violent predator goes to their appointments, goes to their therapy groups, engages in productive activities, programs according to schedule, things of that nature. And what gives these technicians the authority to search the patients' rooms? As part of their duty to ensure a safe environment, if they see that a patient is engaging in behavior that is causing a risk to other patients or to staff or to the institution as a whole, or they have in their possession contraband, the unit supervisor, who is John Sandsboro, as a psychiatric technician and as a unit supervisor, has the authority to contact appropriate persons like the Department of Police Services and gather a search group to conduct the search of a dormitory room as well as conduct a confiscation of a contraband item like Mr. Hoek's computer. And what is the standard for triggering a for-cause search? The standard is essentially a reasonable cause, Your Honor. What we see here in Administrative Directive 820 as well as 818 is simply the staff having a reasonable belief that this item possessed by Corey Hoek constitutes contraband. What we see in the papers brought by Corey Hoek is this concern that this particular document, Administrative Directive 820, was not listed as contraband. That's one of the problems. So the reasonable suspicion that triggered this search was the printing of a document that's not listed as contraband. That is correct, Your Honor. The document, though, has emblazoned on it patient-restricted, and in fact the administrative policy permits staff to determine that an item is indeed a potential risk to institutional security and should be confiscated and turned over to the Department of Police Services for evaluation. And that's exactly what occurred here. If you look at this particular Administrative Directive at page 8, it actually says that this provides a procedure for engaging in search activities by the Department of Police Services and to avoid sending warnings to individuals that a search is about to begin. Now, clearly, that type of description of the search policies and procedures of the Department of Police Services is something that no one would want to have in the hands of a patient who's been designated as a sexually violent predator with a conviction for sex-related offenses and with a mental disorder involving a high likelihood of committing sex offenses in the future. So because this is a secure facility, because this is a facility in which there is a separate unit of police services that does have to engage in search activities where they do not want to send a warning to patients about the search that's about to be engaged in, this type of policy and procedure is considered patient-restricted. Now, Administrative Directive 818 says that every item on the contraband list is, of course, contraband, but it also says if an item's not on the list, maybe it's just been discovered, it's not been put on the list yet, a staff member can find that it poses a danger, confiscate it, and turn it over to the police services for review and evaluation. And that's exactly what occurred here. Take note that Sandsboro made a determination to confiscate this in conjunction with the same determination being made by the Chief of the Vocational Services, John Catano, as well as by the Chief of Police Services, Mr. Deke. That's in the police report. Each of those heads were contacted, and each one said, yes, this is an administrative policy that needs to be maintained on a secure basis because it describes police search procedures. Let me ask you something. It's undisputed that Sandsboro confiscated the laptop, turned it over to the police, and the police have it if it still exists. Why isn't Hawk entitled to either money damages for the loss of his laptop or an order that Sandsboro take steps to get the laptop returned, even though the policy now is that he can't possess the laptop in his room, assuming he's still there? He could have it given to a third party to keep safe for him. Actually, Your Honor, the new regulation, Section 4350, as well as recent case law, the N. Ray Robinson case issued by the Fifth District Court of Appeal of the State of California, both indicate that once contraband, particularly child pornography, is found in a patient's computer, that computer is not returned to the patient. N. Ray Robinson described the difficulty of ferreting out each and every item of child porn in a computer that's been seized. Can't they wipe it clean and then return it? We're often talking, Your Honor, as the Robinson court described, with a multitude of images, not just one single image of child pornography, but thousands of images embedded in a computer. It would take a lot of resources for that computer to be scrubbed, to the point where the Robinson court recognized that the institutional burden was so great and the risk that not all the child porn would be ferreted out also so great, that the department does not have to return a computer to a patient once contraband has been found in it. That's in the regulation now, as well as in the case law. If Mr. Hoke wanted to litigate this issue, would there be anything preventing him from taking this up with the district attorney's office or the police who actually have the computer, rather than your guy who works at a psychiatric hospital? If he wanted to litigate the return of the computer, Your Honor? Yes. I can't speak to that. Obviously, he has filed various motions, as seen in the record, with the Los Angeles Superior Court and the Fresno Superior Court. Where he can go next, I can't speak to that at all. The analog in federal court, of course, I think it's Rule 40, you can request return of your property, file a request for return of your property. You don't have that in state law? Again, Your Honor, all I have is what I see in the record. I do know that there is a forfeiture proceeding that often occurs when there is criminal evidence involved, particularly where child pornography has been found. I think that this is a case where, indeed, this computer now, it's been 10 years in retention with the Los Angeles district attorney's office. It's been under review by way of an internet task force, and so it's been maintained by the Los Angeles county district attorney's office. That being said, Mr. Hope does have access to computers in the computer labs at the Department of State hospitals. He simply cannot personally possess one. But every patient has access to the computer labs at the hospital. If there's anything further, I would also ask the court to recognize that not only was the search of the cell of the dorm room occupied by Mr. Hope appropriate, but so was the seizure of the computer. The search of the dorm room is appropriate simply because at that point in time, Hope told the officers, as well as told Mr. Sandsboro, this particular document was located on a disk in his dorm room. He had no reasonable expectation of privacy in that room. In fact, as the district court noted at that point in time, the contours of the privacy for a civil detainee had yet to be fully determined, and that also indicates the basis for determining that Mr. Sandsboro had qualified immunity to this act. In regards to the argument that Mr. Sandsboro set into motion a series of actions that led to a constitutional violation, we, of course, dispute that. Mr. Sandsboro simply did what he was supposed to do. He ensured that an unsafe item posing danger to the hospital at large, this particular administrative directive, was confiscated and turned over to police services for examination. What police services did with that computer after that point in time, of course, is subject to their expertise and not subject to any particular orders, requests, supervision, or oversight by Mr. Sandsboro. We would ask this court find that also the recent enactment of Section 4350 of Title IX renders moot Mr. Hope's request for relief in terms of the return of his computer. All right. Thank you very much, counsel. Thank you. Good morning, Your Honors, and may it please the Court, Cameron Frazier, also on behalf of Mr. Hoke. I'd like to make just a few brief points on rebuttal. First, there are just too many tribal issues of fact in this case for a summary judgment to be appropriate here. The findings and recommendations, as well as the district court order, resolved impermissibly disputable facts in Mr. Sandsboro's favor. The district court said there was no dispute regarding the nature of this document as contraband. The district court said there was no dispute that Mr. Hoke was seen printing this document from his laptop. The findings and recommendations said there was no dispute that Mr. Hoke was informed that this document was contraband. Mr. Hoke disputes all of those claims. Second, even on the undisputed facts in this case, the numbers just don't add up. I mean, two days elapsed between when this document was confiscated and when Mr. Sandsboro ordered the searches and seizures. He's approached by three police officers in front of other patients. He's placed in an interrogation room with six police officers and hospital staff. They're simultaneously searching through his room in violation of hospital policy. They confiscate 23 items of his personal property. They then wait nearly four months before searching any of it. Two years and eight months elapse before search warrant issues. And it's now been more than 10 years since Mr. Hoke's property was taken from him. His laptop has not been returned despite the fact that no charges have been brought against him in any court. Do you know the status of any efforts, if any, were made by Mr. Hoke to secure the return of the laptop directly from the district attorney's office? Your Honor, I believe that he filed a motion for the return of his property in the L.A. County Superior Court. I'm not exactly sure we could file a 28-J letter on that point by the end of the week. I'm not exactly sure. It seems to me, counsel, that what you would want to do in this case, and I know it's a little awkward because of how you're pro bono counsel for this particular case, but it seems like what you really want to do is get leave to amend to be able to pursue claims against the people who actually have delayed the return of these things. I mean, I know you have claims against Mr. Sandsboro, but you also may have claims against the people who sat on this computer for so long, and that's not really Mr. Sandsboro. I take it if leave were meant, if we were to send this back with leave to amend, then potentially there would be claims against whoever didn't process this as quickly as you think it should have been. Absolutely, Your Honor. But even if there is no leave to amend, again, based on the undisputed facts, a reasonable jury could find, not necessarily will, but could find that the undisputed facts in this case show that the searches and seizures were arbitrary, retaliatory, or certainly clearly excessive. And finally, even if the court is unpersuaded on the qualified immunity point, it's important to remember that that affects only a portion of Mr. Hoek's claims. It has no effect on his claims for equitable relief. And for those reasons, the court should reverse. Thank you very much. All right. Thank you very much, counsel. And I want to thank Hurwitz and Levy and Pepperdine University School of Law for an excellent argument and briefs. Thank you. Well done. The next case, Allen v. Labor-Ready Southwest, is submitted. So we'll take up Dugas v. Lockheed Martin Court.
judges: Wardlaw, Nguyen, Owens